49,474-05

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

| | | |
|---|---|---|
| Ex parte | § | Writ No. 49,474-05 |
| | § | Out Of The 92nd District Court |
| Valentin Moreno, Jr. | § | County Of Hidalgo, |
| | § | In The State Of Texas |
| Applicant | § | Cause No. Cr-0517-96-F(3) |

### APPLICANT'S SUPPLEMENT MEMORADUM IN SUPPORT OF AMENDED APPLICATION FOR WRIT OF HABEAS CORPUS SEEKING RELIEF FROM FELONY CONVICTION UNDER ARTICLE 11.07 AND 11.073 CODE OF CRIM PROCD

TO THE MOST HONORABLE COURT OF CRIMINAL APPEALS:

Comes Now, Valentin Moreno, Jr., Applicant pro se, in the above referenced cause and respectfully files Applicant's Supplement Memorandum In Support Of Amended Application For Writ Of Habeas Corpus. In support, thereof, Applicant would present the following:

### I.

This Honorable Court poses exclusive habeas corpus jurisdiction over the parties and subject-matter, herein, pursuant to Chapter 11 in the Texas Code of Criminal Procedure Ann. (Vernon 2015).

### II.

On November 5, 2015, this Honorable Court granted Applicant's Motion For Leave And To Stop Writ Of Habeas Corpus Review. So, that Applicant could amend his application. The Applicant was granted (30) days.

### III.

Applicant is a pro se prisoner, attempting to exercise due diligence.

### IV.

All Exhibits mentioned and cited herein, are found within the Appendix that

Page 1.

was submitted with the initial application for writ of habeas corpus.

## IV.

### GROUND NUMBER ONE AMENDMENTS

(A) Pursuant to the argument therein, Applicant 'additionally' contends, that he has presented credible scientific evidence, that meet the provisions of Article 11.073(a)(2), not limited thereto.

At trial, the State elicited the scientific testimony of psychology professor Dr. A.J. Alamia, (hereinafter Dr. Alamia). Specifically, that 'in traumatic events the human memory functions like a camera; "taking snapshots that stay ingrained in the memory".' [See; Exhibit D, Pg. 103, Ln. 5-25; Pg. 104, Ln. 1-4 ] The State then, emphasized on Dr. Alamia's scientific testimony mentioned above, in their Closing Arguments. Therein, bolstering and substantiating their key witnesses' testimonies. See Article 11.073(a)(2) in the Texas Code of Criminal Procedure.

Applicant contends, that the scientific evidence he has presented, 'contradicts the scientific evidence the State relied on at his trial, specifically, Dr. Alamia's scientific testimony. [See; Exhibit A, B, C, and E]

(B) Pursuant to this argument, Applicant 'additionally' contends, that for the purpose of this argument, State witness Beatrice Trevino's (hereinafter Trevino) 'post-trial recantation and mistaken identification' needs to be reconsidered, after being reassessed in conjunction with the suggestive post event information and post event mis-information ( hereinafter PEI and PEM), that the State shared with Trevino and the newly discovered and newly obtained scientific evidence on PEI and PEM. [See; Exhibit A.1, Pg. 87, Ln. 9-16 and Exhibits E, F and M.]

Additionally, there after, Applicant makes a claim under Article 11.073 of the C. Cr. P. The scientific related evidence therein, put Trevino's post-trial recantation and mis-identification claim, in a different light and context.

Page 2.

(C) Pursuant to this argument, Applicant 'additionally' contends, that the State influenced and/or tainted the in-court-identification of State witness Yvonne Gonzales (hereinafter Gonzales), with prejudically suggestive PEI. Specifically, detectives telling Gonzales that Applicant was a gang member. [See; Exhibit A.16.]

Applicant contends, that detectives knew that Gonzales had identified the three prepetrators as TCB gang members, in her initial statement. Five days later, detectives reveal to Gonzales, that Applicant was also a gang member.

Based on the circumstances involving this cases, specifically, that the persons allegedly involved, were TCB gang members. Applicant contends, that detectives placing him in the same group, as those identified by Gonzales, amounted to prejudicial PEI. [See; Exhibits E,F and M.]

Gonzales testified, that she did not know the Applicant, yet detectives told her, that the Applicant was a member of the gang she identified the initial three perpetrators of belonging to. Applicant argues, that detectives shared with Gonzales prejudicial PEI, given the nature of the PEI.

## V.

## GROUND NUMBER FOUR AMENDMENTS

Pursuant to Applicant claim of actual innocence, it is additionally asserted, that the foregoing makes a prima facie showing of actual innocence.

In this case, the conviction was obtained on the trial testimonies of three witnesses (Raul Guerrero, Yvonne Gonzales and Beatrice Trevino), and the scientific testimony of eyewitness expert ( Dr. A.J. Alamia).

Herein, Applicant does not just submit Gonzales' recent recantation and mis-identification claim. Along with Gonzales' claim, that she mistaken identified Applicant "eyes". Applicant submits optometry specialist Dr. Paul Michel's

conclusions. According to Dr. Paul Michel, Gonzales' identification of the Applicant's "eyes", was blatantly invalid. Additionally, Gonzales' identification of Applicant's eyes, was based and corroborated on how the shooting allegedly occurred. According to ballistic expert Max Scott, Gonzales' testimony on how the shooting happened, was misleading and false. [See; Exhibit A.7, A.13 and A.16.]

Based on Dr. Paul Michel's and Max Scott's findings and conclusions, and Gonzales' claim that she mis-identified the Applicant. What is one to conclude, about an already improbable identification of the 'eyes'?

Concerning Trevino's recantation amd mis-identification testimony, at the motion for new trial hearing. Applicant reasserts that testimony. Again, based on the newly discovered and newly obtained scientific related evidence, on PEI and PEI, Applicant reasserts Trevino's post-trial mis-identification claim.

It would be a miscarriage of justice, to ignore Trevino post-trial mis-identification testimony, in light of the data on PEI and PEM. Based on the scientific related evidence on PEI and PEM, the State influenced and contaminated Trevino's in-court-identification of the Applicant.

The issue herein, is a claim of actual innocence. Trevino's post-trial mistaken identification claim, conveys the message that she made a mistake and that the applicant is innocent. Over (15) years ago, it was determined that the post-trial misidentification claim, was probably not credible. Okay. Today, based on credible science on PEI and PEM contamination, that post-trial mistaken identification claim, is being reasserted. [See; Exhibit A.1, Pg.87, Ln. 9-16 and Exhibits E, F and M.]

Additionally, Applicant contends Trevino was the reason that this evidence of contamination was perserved and brought to light. The State [n]ever told the defense about any of this, Trevino went to the defense with this information. Had she not, we would not be discusing this [c]rucial issue.

The State's only evidence against the Applicant, was the three eyewitnesses testimonies and identifications. Which were corroborated with Dr. Alamia's scientific testimony. Through Dr. Alamia, the jury was led to believe that 'in traumatic events the human memory functions like a camera.'

Herein, Applicant has presented credible scientific evidence, that shows, Dr. Alamia's testimony was misleading and incorrect. In a nutshell, the scientific evidence that was used to substantiate the State's only evidence, has been shown to have been incorrect.

Based on **all** the evidence in this case and the foregoing, Applicant contends, that he has made a compelling prima facie showing of actual innocence. And, that his conviction is a fundamental miscarriage of justice. See House v Bell, 126 S.Ct. 2064 (2006);(citing, Schlup v. Delo, 115 S.Ct. 851 (1995).)

## VI.

### GROUND NUMBER FIVE

Pursuant to the newly discovered and newly obtained scientific related evidence in foresic psychology. Applicant contends, that he has presented credible scientific evidence that: "contradicts scientific evidence relied on by the State at his trial". Thus, establishing the provisions set forth by new Article 11.073 in the Texas Code of Criminal Procedure.

At trial, the State elicited Dr. Alamia's scientific testimony, specifically, that 'in traumatic events the human memory functions like a camera; taking snapshots that stay ingrained in the memory'. Then in the State's Closing Arguments, the State emphasized on the mentioned testimony of Dr. Alamia, to bolster and corroborate the testimonies of the State's key witnesses.

In support of Applicant's argument, first, he presents the testimonial affidavit of psychology professor Dr. James Aldridge. According to Dr. Aldridge,

**the** human memory does not function like a camera and/or works photographically. Based on his expert opinion, Dr. Alamia' scientific trial testimony was misleading and incorrect. [See; Exhibit E.]

Additionally, psychologists and professor's thereof, have concluded, that the human memory does not operate like a camera; taking snapshots. [See; Exhibits A, B and C.]

Furthermore, according to the Innocence Projects, in 75 percent of DNA exoneration cases, the principle cause for the erroneous guilty verdict, was 'mistaken eyewitness identifications'. It is recorded, that 98 percent of those cases, involved a traumatic crime. See Tillman v. State, 354 S.W.3d 425 (CCAP 2011);(citing Henderson, 208 N.J. 208 (N.J. 2011). Based on these findings and conclusions by the Innocence Projects, scientific evidence today, reflects that the human memory does not function like a camera.

Based on "all" the scientific evidence presented herein, Applicant contends, that he has met the provisions in Article 11.073(a)(2), but not limited thereto. Article 11.073(a)(2), requires for an applicant to present scientific evidence that: "contradicts scientific evidence relied on by the State at trial." The Applicant contends, that the scientific evidence within Exhibits A, B, C and E and the Innocence Projects findings, 'contradicts' the scientific evidence relied on by the State at his trial. Specifically, Dr. Alamia's testimony, that the human memory functions like a camera in traumatic events; taking snapshots that stay ingrained in the memory.

## CONCLUSION

Base on the foregoing, Applicant has met the provisions in Article 11.073 (a)(2). Pursuant to this argument, Applicant would request an evidentiary hearing, if the State disagrees, with the current findings of the scientific community.

Page 6.

## VII.

Based on the amendments submitted herein, Applicant respectfully moves the Honorable Court, for an evidentiary hearing. So, that the record can be fully developed and considered on its merits.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Applicant, Valentin Moreno, Jr., respectfully prays that this Honorable Court will proceed to an evidentiary hearing, at which time Applicant can present live testimony in support of his claims; and after such hearing, that the trial court will recommed that relief be granted; and, finally, that upon proper consideration by the Court of Criminal Appeals, the Applicant be granted the relief he is entitled.

Done on this /st day of December , 2015.

Respectfully Submitted,

Valentin Moreno, Jr.
788216, Robertson Unit
12071 FM 3522
Abilene, Texas 79601

Page 7.

## VERIFICATION

I, Valentin Moreno, Jr., to hereby verify, that the foregoing statements made herein, are true and correct, and affered in good faith, to the same, I render my signature under the penalty of perjury.

Done on this /st day of _December_, 2015.

_Valentin Moreno_
Valentin Moreno, Jr


## CERTIFICATE OF SERVICE

I, Valentin Moreno, Jr., hereby certify that the orginal copy of Applicant's Supplement Memorandum..." was sent to the Clerk of the Court of Criminal Appeals by U.S. certified mail, and that notice of the same was sent to the attorney representing the State, by 1st Class mail.

Done on this /st day of _December_, 2015.

_Valentin Moreno_
Valentin Moreno, Jr

Page 8.